| JOEL VÁZQUEZ GUZMÁN | | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama |
|---|---|---|
| Apelado | | |
| v. | TA2025AP00033 | Caso Núm.: G PE2017-0007 |
| SERVICIOS LEGALES DE PUERTO RICO, INC. Y OTROS | | Sobre: Solicitud de entredicho provisional y permanente, discrimen por incapacidad, acomodo razonable, represalia, acoso laboral y daños y perjuicios |
| Apelantes | | |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Juez Aldebol Mora y la Jueza Boria Vizcarrondo.

**Ortiz Flores, Jueza Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de septiembre de 2025.

Comparece ante nosotros el Sr. Jaime Ruberté Santiago, la Sra. Isabel Figueroa Robles y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, demandados-apelantes), mediante el recurso de epígrafe, y nos solicitan que revoquemos la *Sentencia Parcial Enmendada* emitida el 27 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI) y notificada el 1 de abril de 2025. En el aludido dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación de la Tercera Demanda Enmendada*.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos la decisión apelada.

**I**

El caso que nos ocupa tuvo su inicio el 2 de diciembre de 2016 mediante la presentación de una *Solicitud de Entredicho Preliminar y Permanente, Sentencia Declaratoria y Daños y Perjuicios* por el señor Joel Vázquez Guzmán (Sr. Vázquez Guzmán o demandante-apelado) contra

Servicios Legales de Puerto Rico, Inc. (Servicios Legales). Los hechos relacionados a lo solicitado en el recurso ante nuestra consideración, tienen su génesis en la presentación de la *Tercera Demanda Enmendada* por parte del Sr. Vázquez Guzmán el 2 de julio de 2024 en contra de Servicios Legales, el Sr. Jaime Ruberté Santiago (Sr. Ruberté Santiago), la Sra. Isabel Figueroa Robles y la Sociedad Legal de Gananciales compuesta por ambos.[1] Las causas de acción presentadas por el Sr. Vázquez Guzmán contra los demandados eran sobre discrimen por discapacidad, acomodo razonable, represalias, acoso laboral y daños y perjuicios. En esencia, la parte demandante arguyó que padece de una enfermedad visual aguda por la cual tuvo que ser intervenido quirúrgicamente en el año 2016. Adujo que, a raíz de esta intervención quirúrgica, su visión ha disminuido considerablemente. Por otro lado, arguyó que debido a que fue despedido de su empleo en Servicios Legales, desarrolló episodios de depresión, ataques de pánico y crisis emocionales que han requerido tratamientos y atención médica.

La parte demandante alegó que, para el año 2016, le cursó los formularios para formalizar su solicitud de acomodo razonable a su patrono Servicios Legales. Adujo que estos formularios fueron preparados y especificados por el personal médico que le realizó sus tratamientos, pero que estos nunca fueron atendidos, a pesar de que se había sugerido reubicarlo tanto en su área de trabajo como en sus responsabilidades.

Arguyó que para el año 2018, luego de haber sido reinstalado a su empleo, sufrió un percance de salud por el cual fue recomendado permanecer temporeramente fuera de su trabajo por el personal médico. A pesar de lo anterior, la parte demandante alegó que fue despedido por Servicios Legales como un acto de represalia y discrimen. Adujo que, cuatro años y medio después, fue restituido a su lugar de empleo en Servicios Legales, pues el Tribunal Supremo de Puerto Rico emitió un *Mandato* en el cual se confirmó un Laudo de Arbitraje que determinó que

---

[1] Apéndice del Recurso de *Apelación*, págs. 1-303.

el demandante fue despedido injustificadamente y por consiguiente ordenó su restitución inmediata a su puesto. Alegó que, al regresar nuevamente a su trabajo, sometió los formularios para formalizar su solicitud de acomodo razonable.

La parte demandante continuó alegando que, para el año 2022, le informó al Director del Centro de Ponce, el Sr. Ruberté Santiago, sobre su condición médica, así como los acomodos razonables previamente solicitados. El demandante arguyó que le comunicó a el Sr. Ruberté Santiago sobre su condición médica y sobre la existencia de una reclamación ante los Tribunales respecto a los requerimientos de acomodo razonable en su lugar de empleo. Adujo que, se vio en la obligación de presentar ante el Tribunal una solicitud de reapertura, pues estaba experimentando un patrón de represalias y acoso laboral por parte del Sr. Ruberté Santiago. Expresó que el Sr. Ruberté Santiago le asignó al demandante un inventario de casos que excedían las capacidades físicas de este. Alegó que a raíz de las actuaciones de acoso laboral por parte su supervisor, el Sr. Ruberté Santiago, se vio en la obligación de presentar una querella interna en contra de este último ante su patrono, Servicios Legales.

Del mismo modo, el Sr. Vázquez Guzmán alegó que los actos de hostigamiento y represalias por parte del Sr. Ruberté Santiago no cesaron y ocasionaron que el demandante estuviese en un estado de aprensión. Adujo que, el 29 de febrero de 2024, el Sr. Ruberté Santiago le asignó un caso de urgencia relativo a violencia domestica que tenía un señalamiento para el 5 de marzo de 2024. Arguyó que, debido a esto, tuvo una crisis emocional que eventualmente provocó su arresto por la Policía de Puerto Rico. Expresó que el 9 de abril de 2024, fue despedido por unos alegados hechos violentos, los cuales alegó fueron actos de acoso laboral y represalias a los que fue sometido. Por lo que solicitó al Tribunal que declarara Ha Lugar la reclamación, imponiéndole el pago de los haberes y beneficios dejados de devengar, incluyendo una cantidad razonable por

concepto de honorarios de abogados y que, además, se emita una orden de entredicho estatutario para reinstalar al demandante en su empleo y se otorguen los acomodos razonables.

En respuesta, el 28 de octubre de 2024 el Sr. Ruberté Santiago, la Sra. Isabel Figueroa Robles y la Sociedad Legal de Gananciales compuesta por ambos, presentaron una *Moción de Desestimación de la Tercera Demanda Enmendada*.[2] En esencia, solicitó la desestimación de la *Tercera Demanda Enmendada* pues arguyó que no se configuraba una reclamación que ameritaba la concesión de un remedio. De la misma forma, adujo que la Sociedad de Bienes Gananciales no podría ser parte demandada en una reclamación laboral por actuaciones de acoso laboral que haya incurrido uno de los cónyuges, pues esta no responde por los daños ocasionados y por actos intencionales que realice uno de los cónyuges.

En primer lugar, la parte demandada alegó que no respondía ante el Sr. Vázquez Guzmán por represalias bajo la Ley Núm. 115 de 1991, mejor conocida como *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*, 29 LPRA sec. 194, ya que bajo este estatuto no existía una acción independiente contra la figura del supervisor por alegados actos de represalias. En segundo lugar, la parte demandada alegó que no respondía por despido injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, mejor conocida como la *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a, pues arguyó que el Sr. Vázquez Guzmán no era un empleado cobijado bajo este estatuto. Del mismo modo, alegó que bajo Ley Núm. 80 de 30 de mayo de 1976, *supra*, no se permitía responsabilizar a individuos en carácter personal por el despido injustificado de un empleado. En tercer lugar, adujo que no respondía por el alegado discrimen sufrido por el Sr. Vázquez Guzmán en el ambiente laboral, pues bajo la Ley Núm. 44 de 2 de julio de 1985, mejor conocida como la *Ley para Prohibir el Discrimen Contra las*

---

[2] Apéndice del Recurso de *Apelación*, págs. 341-365.

*Personas con Impedimentos Físicos, Mentales o Sensoriales*, 1 LPRA sec. 501, la obligación de proveer un acomodo razonable a un empleado con diversidad funcional recaía sobre el patrono y no sobre su supervisor. De manera similar, la parte demandada alegó que debido a que no se configuraron las reclamaciones del demandante respecto a represalias y discrimen por incapacidad, no se configuró su causa de discrimen bajo la Ley Núm. 100 de 30 de junio de 1959, mejor conocida como la *Ley Antidiscrimen de Puerto Rico*, 29 LPRA sec.146.

Respecto a la causa de acción de acoso laboral de la parte demandante bajo la Ley Núm. 90 de 2020, mejor conocida como la *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico*, 29 LPRA sec. 3111, la demandada alegó que para que el supervisor fuese responsable por el acoso laboral sufrido por un empleado, este último debe haber alegado que el patrono intervino con el supervisor para dar por terminado el acoso. De la misma forma, arguyó que el empleado debía alegar que el supervisor continuó con el acoso, creando así nuevos incidentes de acosos laboral. Al no darse ninguna de las circunstancias antes expuestas, la parte demandada alegó que no se configuraba la causa de acción de acoso laboral bajo la Ley Núm. 90-2020, *supra*.

Por su lado, el 9 de diciembre de 2024, la parte demandante presentó su *Oposición en Cumplimiento de Orden a Moción de Desestimación de la Tercera Demanda Enmendada*.[3] En primer lugar, la parte demandante coincidió con la parte demandada en que la Sociedad Legal de Bienes Gananciales no respondía por actos intencionales de uno de sus cónyuges. Del mismo modo, reconoció los planteamientos hechos por la parte demandada sobre la no procedencia de las acciones sobre despido injustificado, discrimen en el empleo y represalias en su contra. No obstante, reiteró la procedencia de las causas de acción por acoso laboral contra su supervisor bajo Ley Núm. 90-2020, *supra*, y Ley Núm. 44 de 2 de julio de 1985, *supra*. Por otro lado, la parte demandante adujo que si un

---

[3] Apéndice del Recurso de *Apelación*, págs. 366-372.

patrono no ha cumplido con establecer un protocolo o procedimiento para atender los reclamos de acoso laboral acorde lo disponen Artículos 5 y 10 de la Ley Núm. 90-2020, 29 LPRA secs. 3115 y 3120, el empleado no estaba obligado de agotar el remedio de mediación ante el Negociado de Métodos Alternos. Por lo que alegó que la parte demandada estaba impedida de levantar como argumento el agotamiento de mediación, pues no habían adoptado un protocolo para tramitar las quejas sobre acoso laboral acorde a los Artículos 5 y 10 de la Ley Núm. 90-2022020, *supra.*

Así las cosas, el 19 de diciembre de 2024, la parte demandada presentó su *Réplica a Oposición de Desestimación de la Tercera Demanda Enmendada.*[4] En esencia, la parte demandada reafirmó que la demanda presentada por la parte demandante es insuficiente en derecho para establecer una reclamación personal en su contra. Aduce de la misma forma, que la *Tercera Demanda Enmendada* carecía de hechos concretos y específicos que le impusiera responsabilidad al Sr. Ruberté Santiago como supervisor del demandante por acoso laboral.

Finalmente, el 28 de febrero de 2025, el TPI emitió una *Sentencia Parcial* en la cual declaró Ha Lugar la *Moción de Desestimación de la Tercera Demanda Enmendada* presentada por la parte demandada, y en su consecuencia, se desestimaron las causas de acción presentadas contra la Sra. Isabel Figueroa Robles y la Sociedad Legal de Gananciales.[5] Del mismo modo, se desestimaron las causas de acción bajo la Ley Núm. 115-1991, *supra*; la Ley Núm. 80 de 30 de mayo de 1976, *supra*; y la Ley Núm. 100 de 30 de junio de 1959, *supra*, contra el Sr. Ruberté Santiago. En esencia, el foro primario al evaluar los escritos presentados razonó que ambas partes coincidieron en que no procedían las causas de acción antes citadas por lo que precedió a desestimarlas.

No obstante, el foro de origen declaró No Ha Lugar la moción dispositiva respecto a las causas de acción bajo la Ley Núm. 90-2020,

---

[4] Apéndice del Recurso de *Apelación,* págs. 373-379.
[5] *Id.* págs. 380-386.

*supra*, y la Ley Núm. 44 de 2 de julio de 1985, *supra*, contra el Sr. Ruberté Santiago.  El foro de instancia concluyó que no procedía desestimar en su totalidad la *Tercera Demanda Enmendada* pues entendió que existía una reclamación por parte del demandante contra el demandado.  De la misma forma, el TPI razonó que, bajo los estatutos precitados se desprende de manera clara y precisa, el reconocimiento de la responsabilidad de un supervisor por actos discriminatorios e intencionales contra un empleado.

El 7 de marzo de 2025, la parte demandada presentó una *Moción para que se imparta finalidad a Sentencia Parcial*.[6]  Luego, el TPI emitió una *Sentencia Parcial Enmendada* el 27 de marzo de 2025, notificada el 1 de abril del mismo año. En esencia, realizó las mismas expresiones y análisis realizados en la *Sentencia Parcial* del 28 de febrero de 2025, pero imponiéndole finalidad como solicitado por la parte demandada en su escrito del 7 de marzo de 2025.

Por su parte, el 16 de marzo de 2025, el demandado el Sr. Ruberté Santiago presentó una *Moción de Reconsideración de Sentencia Parcial*.[7]

Así las cosas, el 21 de mayo de 2025 el TPI emitió una *Resolución* en la que declaró no ha lugar la *Moción de Reconsideración de Sentencia Parcial*.[8]

Inconforme con lo resuelto, los apelantes acuden ante nosotros y en su recurso exponen los siguientes señalamientos de error:

**Primero:** Negarse a desestimar la causa contra el supervisor en su carácter personal por alegada violación de un acomodo razonable bajo la Ley 44-1985.

**Segundo:** Asumir jurisdicción para tramitar una acción de alegado acoso laboral contra el supervisor en su carácter personal bajo la Ley 90-2020, a pesar de que el apelado incumplió con el requisito jurisdiccional de primero acudir al Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial.

**Tercero:** Negarse a desestimar la causa contra el supervisor en su carácter personal por alegado acoso laboral bajo la Ley 90-2020, a pesar de que la demanda no alega hechos que configuren una reclamación que justifique la concesión de un remedio bajo dicha ley.

---

[6] Apéndice del Recurso de *Apelación,* págs. 388-391.
[7] *Id.* págs. 405-432.
[8] *Id.* pág. 461.

**Cuarto:** Determinar que el apelado no fue temerario al instar demanda contra la [S]ociedad [L]egal de [B]ienes [G]ananciales del supervisor y contra la esposa de éste.

El 2 de julio de 2025 emitimos una *Resolución* donde concedimos al apelado hasta el 22 de julio para presentar su oposición. El 21 de julio de 2025, la parte apelada presentó una *Solicitud de Prórroga* solicitando una prórroga de veinte días. El 22 de julio de 2025 emitimos una *Resolución* concediendo a la parte apelada hasta el lunes 11 de agosto de 2025, para que presentarán su alegato en oposición. El 11 de agosto de 2025, la parte apelada presentó una *Oposición a Apelación en Cumplimiento de Orden*.

Cumplido con lo ordenado, contamos con el beneficio de ambas partes y al así quedar el recurso perfeccionado nos encontramos en posición de resolver. Veamos.

**II**

**A**

La Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, estatuye las normas generales de las alegaciones y establece, en parte, que una alegación que exponga una solicitud de remedio comprende: "(1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho". Así pues, las alegaciones constituyen aquellos enunciados "mediante los cuales las partes presentan los hechos en que apoyan o niegan sus reclamaciones o defensas", cuyo fin es "notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes". *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1061-1062 (2020), citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, 6ta. Ed. LexisNexis, 2017, Sec. 2202, pág. 279.

Nuestro ordenamiento procesal permite la presentación de mociones dispositivas antes del juicio en sus méritos. Esto es, que una parte solicite que todos o algunos de los asuntos en controversia sean resueltos sin necesidad de una vista plenaria. A esos efectos, la moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap.

V, R. 10.2, "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008), citando a *Colón v. Lotería*, 167 DPR 625 (2006). La citada regla dispone "que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable". 32 LPRA Ap. V, R. 10.2.

Es norma asentada que, al examinar una petición desestimatoria, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos del modo más beneficioso a la parte demandante. *Cruz Pérez v. Roldan Rodríguez*, 206 DPR 261, 267 (2021), citando a *López García v. López García*, 200 DPR 50, 69 (2018); *Colón Rivera et al. v. ELA*, 189 DPR 1033 (2013). Ello conlleva que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, págs. 428-429. Para que la moción de desestimación prevalezca "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013). Además, la desestimación tampoco procede si la demanda es susceptible de ser enmendada. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, pág. 429. La norma que impera en nuestro ordenamiento jurídico es que, cuando se interpone una moción de desestimación, el tribunal debe conceder el beneficio de cuanta inferencia sea posible de los hechos alegados en la

demanda. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da Ed., Publicaciones JTS, 2011, Tomo II, pág. 532.

Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo "debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, en la pág. 429 citando a *Pressure Vessels P.R. v. Empire Gas P.R*., 137 DPR 497 (1994), *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). Además, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de sus análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.

El doctor Cuevas Segarra nos comenta que el Tribunal Supremo de Puerto Rico explicó de forma acertada en *Reyes v. Sucn. Sánchez Soto* lo siguiente:

> El texto de la actual Regla es a[u]n más favorable para un demandante, ya que la moción para desestimar no ha de considerarse s[o]lo a la luz de una causa de acción determinada y sí a la luz del derecho del demandante a la concesión de un remedio, cualquiera que [e]ste sea. En vista de ello, las expresiones que hicimos en el caso de Boulon, particularmente la de que una demanda no debe ser desestimada por insuficiencia, a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación, tienen aún mayor virtualidad […] J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo II, Publicaciones JTS, 2011, pág. 528 citando a *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305,309 (1970).

Para que el demandado prevalezca al presentar una moción de desestimación al amparo de la Regla 10.2 (5), *supra* "debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor". *Id.* en la pág. 529. Sin embargo, esto último "se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente que de su faz no den margen a dudas". Cuevas Segarra, *op. cit.*, en la pág. 529.

Por último, cabe mencionar que se plantea que cuando se presenta una moción de desestimación bajo la Regla 10.2 (5), *supra,* "[l]a controversia no es si el demandante va finalmente a prevalecer, sino, si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos [correctamente] alegados en la demanda". *Id.* en la pág. 530. Así pues, al analizarse una moción de desestimación presentada tras una demanda "el tribunal debe concederle el beneficio de cuanta inferencia sea posible de los hechos alegados en dicha demanda". *Id.* en la pág. 532.

**B**

La Ley Núm. 44 de 2 de julio de 1985, conocida como la *Ley para Prohibir el Discrimen Contra las Personas con Impedimentos Físicos, Mentales o Sensoriales*, 1 LPRA sec. 501, fue adoptada con el objetivo de garantizar igualdad a las personas con diversidad funcional física, mental o sensorial en situaciones en donde se enfrenten a actos discriminatorios que limitan su oportunidad de desempeñarse, participar y competir adecuadamente en el ambiente laboral. *Guardiola Álvarez v. Depto. de la Familia*, 175 DPR 668, 683 (2009). En específico, el Artículo 2 de la Ley Núm. 44 de 2 de julio de 1985, 1 LPRA sec. 502, establece lo siguiente:

> **Se prohíbe que cualquier persona natural o jurídica, por sí o a través de otra**, impida, estorbe, limite o excluya a **otra persona con impedimentos** por el mero hecho de tales impedimentos, **de participar, formar parte o disfrutar en o**

**de cualesquiera programas o actividades organizadas**, patrocinadas, operadas, implantadas, administradas o de cualquier otra forma dirigidas o llevadas a cabo por cualesquiera instituciones públicas y privadas, de todos los niveles de enseñanza e independientemente si reciben o no recursos económicos del Estado. (Énfasis suplido.)

Sobre su interpretación, el Artículo 14 de la Ley Núm. 44 de 2 de julio de 1985, 1 LPRA sec. 5011a, establece lo siguiente:

Esta ley debe ser interpretada de la forma más beneficiosa para las personas con impedimentos. Todas las ramas gubernamentales y las personas naturales o jurídicas, al interpretar esta legislación, deben utilizar una interpretación liberal y no restrictiva. Se precluye la utilización, como precedente reductor del alcance de los derechos de las personas con impedimentos, de toda decisión de un tribunal o una agencia administrativa federal que interprete o haya interpretado de una manera restrictiva y contra los intereses de las personas con impedimentos la "Ley Pública Federal" de 26 de julio de 1990, conocida como "The Americans with Disabilities Act".

## C

La Ley Núm. 90-2020, mejor conocida como la *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico,* 29 LPRA sec.3112, fue adoptada para velar con el cumplimiento de la garantía constitucional sobre la protección de la inviolabilidad de la dignidad del ser humano en el empleo. Artículo 2 de la Ley Núm. 90-2020, *supra.* En específico, este estatuto establece una vigorosa política pública en contra de todo tipo de acoso laboral que interfiera en el desempeño, paz y dignidad del empleado sin importar su clasificación o categoría de empleo. *Id.*

El Artículo 4 de la Ley Núm. 90-2020, 29 LPRA sec.3114, en su inciso (3), define acoso laboral como sigue:

[…][A]quella **conducta malintencionada, no deseada, repetitiva y abusiva; arbitraria, irrazonable y/o caprichosa; verbal, escrita y/o física**; de forma reiterada **por parte del** patrono, sus agentes**, supervisores** o empleados, **ajena a los legítimos intereses de la empresa del patrono**, **no deseada por la persona, que atenta contra sus derechos constitucionales protegidos**, tales como: la inviolabilidad de la dignidad de la persona, la protección contra ataques abusivos a su honra, su reputación y su vida privada o familiar, y la protección del trabajador contra riesgos para su salud o integridad personal en su trabajo o empleo. Esta conducta de acoso laboral crea un entorno de trabajo intimidante, humillante, hostil u ofensivo, no apto para que la persona razonable pueda ejecutar sus funciones o tareas de forma normal. (Énfasis nuestro.)

Por otro lado, el Artículo 5 de la Ley Núm. 90-2020, 29 LPRA sec.3115, dispone las responsabilidades del patrono ante sus empleados referente al acoso laboral. Del mismo modo, el precitado artículo impone a los patronos la responsabilidad de adoptar protocolos para desalentar y atender reclamos internos sobre acoso laboral. *Id.* Sobre el mismo, el Artículo 5 de la Ley Núm. 90-2020, *supra*, versa como sigue:

> Todo patrono que incurra, fomente o permita el acoso laboral, será civilmente responsable frente a las personas afectadas. Será responsabilidad de todo patrono tomar las medidas necesarias para eliminar o reducir al mínimo la ocurrencia del acoso laboral en el lugar de trabajo. **Por lo que, todo patrono adoptará e implementará las políticas internas necesarias a los fines de prevenir, desalentar y evitar el acoso laboral en sus centros de trabajo, así como también investigará todas las alegaciones sobre el particular e impondrá las sanciones correspondientes en aquellos casos en que procedan.**
>
> **En el caso de patronos que hayan suscrito convenios colectivos con sus empleados** al amparo de la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, conocida como "Ley de Relaciones del Trabajo de Puerto Rico"; de la Ley Núm. 45 de 25 de febrero de 1998, según enmendada, conocida como "Ley de Relaciones del Trabajo para el Servicio Público"; y de la "Ley Federal de Relaciones del Trabajo", **que contengan cláusulas que prohíban el acoso laboral en sus centros de trabajo, se entenderá que han cumplido con la obligación impuesta en este Artículo, siempre y cuando dicha cláusula se análoga o más estricta, a la que mediante esta Ley se adopta requiere**.
>
> Todo patrono será siempre responsable por las actuaciones del personal de supervisión a su cargo, u otros empleados, que constituyan acoso laboral si el patrono, sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta, a menos que el patrono demuestre que tomó acciones inmediatas y apropiadas para corregir cualquier conducta de hostigamiento laboral y el empleado irrazonablemente falló en aprovechar las oportunidades de medidas preventivas o correctivas provistas por el patrono para evitar los daños. Esta defensa no será eximente de responsabilidad cuando las acciones sean cometidas por el propio patrono.
>
> En ese caso de que el patrono demuestre haber tomado acciones inmediatas y apropiadas para corregir la situación, gozará de inmunidad contra reclamaciones sobre las disposiciones de esta Ley, sin que dicha inmunidad pueda cobijar a la persona que ha cometido el acoso laboral en su calidad personal.
>
> Cuando la situación de acoso laboral se suscite entre empleados de diversos patronos, como pueden ser empleados de agencias de empleos temporeros, empresas de seguridad, empresas de mantenimiento u otros

contratistas, quienes interactúan en un centro de trabajo común, todos los patronos involucrados tendrán la obligación de investigar la alegación de acoso laboral, independientemente de si son o no, patrono directo del empleado querellante.

Un patrono será responsable de los actos de acoso laboral hacia sus empleados en el lugar de trabajo, por parte de personas no empleadas por éste, si el patrono, sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta y no tomaron acción inmediata y apropiada para corregir la situación[.] (Énfasis suplido.)

El Artículo 10 de la Ley Núm. 90-2020, 29 LPRA sec. 3120, establece el procedimiento que un empleado o empleada debe seguir cuando desee reportar que ha sido víctima de acoso laboral. Sobre esto, el precitado artículo establece lo siguiente:

**Toda persona que reclame ser víctima de acoso laboral deberá comunicarlo siguiendo el procedimiento y protocolo adoptado por su patrono**, el cual, según ya dispuesto, deberá ser amparado en las guías uniformes establecidas por el Departamento del Trabajo y Recursos Humanos, la Oficina de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico, la Rama Legislativa y la Rama Judicial, según aplique.

**Si las gestiones realizadas conforme al procedimiento y protocolo adoptado por el patrono resultan infructuosas, el empleado afectado acudirá al Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial.** Si habiéndose orientado, **las partes no aceptan la mediación o el mediador no recomienda la misma, entonces se podrá acudir ante la sala del tribunal competente presentando evidencia acreditativa de que se agotó dicho mecanismo alterno y radicar la acción civil que provee esta Ley**. (Énfasis suplido.)

**D**

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. III, R. 44.1, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad.  En su parte pertinente, el inciso (d) de la mencionada norma establece lo siguiente: "En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta." 32 LPRA Ap. V, R. 44.1 (d).

Se considera temeridad "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables." *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Cabe señalar que esta misma conducta se toma en cuenta tanto para la imposición de honorarios de abogado al amparo de la Regla 44.1 (d) de Procedimiento Civil, supra, como para la imposición del interés legal por temeridad al amparo de la Regla 44.3 (b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3 (b). Según lo ha expresado el Tribunal Supremo, ambas penalidades "persiguen el mismo propósito de disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte." *Marrero Rosado v. Marrero Rosado*, supra, pág. 505.

El propósito de la imposición de honorarios por temeridad es penalizar a la parte perdidosa "que[,] por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). Se considera que incurre en temeridad aquella parte que torna necesario un pleito frívolo y obliga a la otra a incurrir en gastos innecesarios. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). La determinación de si una parte obró con temeridad descansa en la sana discreción del tribunal sentenciador. *Id.* La imposición del pago de honorarios de abogado es imperativa cuando el tribunal sentenciador concluye que una parte incurrió en temeridad. *Id.* Además, debemos señalar que la norma es que "[e]n ausencia de una conclusión expresa a tales efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada." *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38, 40(1962). Es decir, no es necesaria una determinación expresa de temeridad si el foro sentenciador impuso el pago de una suma

por honorarios de abogado en su sentencia. Por constituir un asunto discrecional del tribunal sentenciador, los tribunales revisores solo intervendremos en dicha determinación cuando surja un claro abuso de discreción. *P.R. Oil v. Dayco*, *supra*, pág. 511.

Sin embargo, es importante aclarar que se entiende que no existe temeridad cuando lo que se plantea ante el foro primario son planteamientos complejos y novedosos que no han sido resueltos en nuestra jurisdicción. De igual manera, no existe temeridad en aquellos casos en que el litigante actúa de acuerdo con la apreciación errónea de una cuestión de derecho y no hay precedentes establecidos sobre la cuestión. Tampoco se incurre en temeridad cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso. *Santiago v. Sup. Grande*, 166 DPR 796, 821 (2006).

**III**

En el caso ante nuestra consideración, la parte apelante nos plantea, en su segundo señalamiento de error, que el TPI erró al asumir jurisdicción para tramitar la acción sobre acoso laboral contra el supervisor bajo la Ley Núm. 90-2020, *supra,* pues alega que el apelado incumplió con el requisito jurisdiccional de primero acudir al Negociado de Métodos Alternos para la Solución de Conflictos del Poder Judicial. Al ser un planteamiento jurisdiccional, atenderemos este señalamiento de error en primera instancia, pero adelantamos que no le asiste razón. Veamos.

El Artículo 5 de la Ley Núm. 90-2020, *supra*, les impone a los patronos la responsabilidad de adoptar e implementar políticas internas necesarias para prevenir, desalentar y evitar el acoso laboral en sus centros de trabajo. De la misma forma, investigará todas las alegaciones sobre el particular e impondrá las sanciones correspondientes en los casos en que procedan. El precitado artículo establece que, cuando el patrono haya suscrito convenios colectivos con sus empleados, estos deberán contener cláusulas que prohíban el acoso laboral en sus centros de trabajo. Esto es así, pues para que se entienda que se ha cumplido con la

obligación impuesta en el referido artículo, la cláusula del convenio debe ser análoga o más estricta, a la que mediante este estatuto se requiere.

En el caso de epígrafe, el TPI tuvo ante su consideración el planteamiento de falta de jurisdicción bajo el fundamento de que la parte apelada no agotó los remedios establecidos bajo la Ley Núm. 90-2020, *supra*. El 17 de mayo de 2024, el TPI emitió una *Resolución* mediante la cual resolvió, luego de evaluar el Convenio Colectivo de Servicios Legales, que Servicios Legales, patrono de la parte apelada, carecía de un protocolo específico para atender las querellas internas por acoso laboral, así como tampoco proveía un procedimiento para tramitar las reclamaciones de acoso laboral según lo requieren los Artículos 5 y 10 de la Ley Núm. 90-2020, *supra*.[9] Por tal razón, el foro de origen concluyó que Servicios Legales incumplió con el requisitos establecidos en los Artículos 5 y 10 de la Ley Núm. 90-2020, *supra*, y resolvió que estaba impedido de exigirle a la parte apelada que agotara los mecanismos de mediación ante el Negociado de Métodos Alternos, previo a la presentación de un recurso en los tribunales.

Luego de un estudio del Convenio Colectivo de Servicios Legales[10], resolvemos, que no le asiste razón a la parte apelante en su segundo señalamiento de error. Esto es así, pues de un estudio y análisis del precitado convenio no surge que el patrono de la parte apelada hubiese adoptado un protocolo o procedimiento para tramitar las reclamaciones de acoso laboral según lo requieren los Artículos 5 y 10 de la Ley Núm. 90-2020, *supra*. Por ende, la parte apelante, como supervisor de la parte apelada, está impedido de exigirle a la parte apelada que agotara los mecanismos de mediación ante el Negociado de Métodos Alternos, previo a la presentación de su recurso en los tribunales.

En su primer señalamiento de error, la parte apelante nos plantea que el TPI incidió al negarse a desestimar la causa contra el apelante en

---

[9] Véase, Apéndice del Recurso de *Apelación,* págs. 528-536.
[10] Véase, Apéndice del Recurso de *Apelación,* págs. 502-524.

su carácter personal por alegada violación de un acomodo razonable bajo la Ley Núm. 44 de 2 de julio de 1985, *supra*. Por otro lado, en su tercer señalamiento de error la parte apelante nos señala que el foro de origen erró al negarse a desestimar la causa por alegado acoso laboral bajo la Ley Núm.90-2020, *supra*, a pesar de que la demanda no alega hechos que configuren una reclamación que justifique la concesión de un remedio bajo dicha ley. Atenderemos ambos señalamientos de error de manera conjunta.

El Artículo 2 de la Ley Núm. 44 de 2 de julio de 1985, *supra*, establece una prohibición a cualquier persona natural o jurídica, por sí o a través de otra, que impida, estorbe, limite o excluya a otra persona con diversidad funcional, por el mero hecho de tales impedimentos, de participar, formar parte o disfrutar en o de cualquier programa o actividades organizadas, operadas, administradas o de cualquier otra forma dirigidas o llevadas a cabo por cualesquiera instituciones públicas y privadas. Bajo el Artículo 14 del precitado estatuto, se establece que esta ley debe ser interpretada de la forma más beneficiosa para las personas con diversidad funcional.

El Artículo 4 (3) de la Ley Núm. 90-2020, *supra*, define acoso laboral como aquella conducta malintencionada, no deseada, repetitiva y abusiva; irrazonable; verbal, escrita y/o física; de forma reiterada por parte del patrono, supervisores o empleados, ajena a los intereses de la empresa del patrono, no deseada por la persona, que atenta contra sus derechos constitucionales.

En el caso de epígrafe, la parte apelante nos plantea que erró el TPI al no desestimar la causa de acción sobre discrimen bajo la Ley Núm. 44 de 2 de julio de 1985, *supra*. A la luz del derecho antes expuesto, coincidimos con el TPI en que bajo los estatutos precitados se desprende el reconocimiento de la responsabilidad de un supervisor por actos discriminatorios e intencionales contra un empleado.

Por otro lado, bajo la Regla 10.2 de Procedimiento Civil, *supra*, la parte contra quien se ha presentado una reclamación puede solicitar todos o algunos de los asuntos en controversia sean resueltos por el Tribunal sin necesidad de una vista plenaria. Al examinar una moción de este tipo los tribunales deben considerar, si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. Además, se debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de sus análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Una reclamación que justifique la concesión de un remedio es aquella que expresa una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, incluyendo una solicitud del remedio a que crea tener derecho.

En el caso ante nuestra consideración, la parte apelante nos alega que incidió el foro de primera instancia al no desestimar las reclamaciones presentadas por el apelado bajo la Ley Núm. 90-2020, *supra*, pues alega que no expuso hechos que configuren una reclamación que justifique la concesión de un remedio. Luego de un análisis minucioso de la *Tercera Demanda Enmendada* y la *Sentencia Parcial Enmendada*, coincidimos con el TPI en que la parte apelada posee una causa de acción sobre discrimen bajo la Ley Núm. 44 de 2 de julio de 1985, *supra*, y acoso laboral bajo la Ley Núm. 90-2020, *supra*, contra el apelante. Queda meridianamente claro, que la parte apelada estableció hechos sobre los cuales alegó que le comunicó al apelante, que a su vez es su supervisor, sobre sus condiciones médicas, así como los acomodos razonables solicitados. Alegó, además, que se vio en la obligación de presentar ante el Tribunal una solicitud de reapertura del caso, pues estaba experimentando un patrón de represalias y acoso laboral por parte del apelante mediante acciones y expresiones sobre su persona. Entre las alegaciones expuestas en la *Tercera Demanda*

*Enmendada*, la parte apelada adujó que el apelante le asignó un inventario de casos que excedía sus capacidades físicas. Los hechos antes expuestos por el apelado demuestran una relación sucinta y sencilla sobre un patrón de discrimen y acosos laboral de parte del apelante contra su persona, que a su vez justifican la concesión de un remedio.

Finalmente, la parte apelante nos plantea que el TPI erró al determinar que el apelado no fue temerario al instar demanda contra la Sociedad Legal de Bienes Gananciales del supervisor y contra la esposa de éste.

La Regla 44.1 de Procedimiento Civil, *supra*, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad. Se considera temeridad, aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. La imposición del pago de honorarios de abogado es imperativa cuando el tribunal sentenciador concluye que una parte incurrió en temeridad, en ausencia de una conclusión expresa a tales efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada. Por constituir un asunto discrecional del tribunal sentenciador, los tribunales revisores solo intervendremos en dicha determinación cuando surja que un claro abuso de discreción.

Luego de un estudio del legajo judicial, y la *Sentencia Parcial Enmendada*, resolvemos que no le asiste razón a la parte apelante en su último planteamiento de error pues no surge que la parte apelada hubiese actuado con temeridad al incluir a la Sra. Isabel Figueroa Robles y la Sociedad Legal de Gananciales en su reclamación. Del mismo modo, no surge que el foro primario hubiese hecho una determinación al respecto.

**IV**

Por los fundamentos que nos anteceden, confirmamos la decisión apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Aldebol Mora disiente con opinión escrita. La Jueza Boria Vizcarrondo concurre sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL VI

| JOEL VÁZQUEZ GUZMÁN<br><br>Apelado<br><br>v.<br><br>SERVICIOS LEGALES DE PUERTO RICO, INC. Y OTROS<br><br>Apelantes | TA2025AP00033 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: G PE2017-0007<br><br>Sobre: Solicitud de entredicho provisional y permanente, discrimen por incapacidad, acomodo razonable, represalia, acoso laboral y daños y perjuicios |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

## VOTO DISIDENTE

En San Juan, Puerto Rico, a 23 de septiembre de 2025.

Respetuosamente, disiento de la determinación del Panel. De un examen sosegado del expediente ante nos, estimo que el recurso radicado, aunque formalmente se denominó apelación por impugnar una sentencia parcial, en realidad se recurre de una resolución interlocutoria mediante la cual el Tribunal de Primera Instancia denegó una moción dispositiva.

Sabido es que el nombre no hace la cosa y es el contenido de un escrito, no el título que se le dé, el que determina su naturaleza. *Borschow Hosp. v. Jta. de Planificación,* 177 DPR 545, 567 (2009); *Meléndez Ortiz v. Valdejully,* 120 DPR 1, 24 (1987), citando a *Comisión Servicio Público v. Tribl. Superior,* 78 DPR 239, 246 (1955). En el caso de autos, la *Sentencia Parcial Enmendada* apelada recoge dos determinaciones, a saber: (1) En primer lugar, el foro primario declaró Ha Lugar la solicitud de desestimación de la tercera

demanda enmendada y, en su consecuencia, desestimó las causas de acción incoadas en contra de Isabel Figueroa Robles y la Sociedad Legal de Gananciales compuesta por esta y Jaime Ruberté Santiago (Ruberté Santiago) (peticionarios). Asimismo, desestimó las causas de acción presentadas en contra de Ruberté Santiago bajo la *Ley Contra el Despido Injustificado o Represalias a Todo Empleado por Ofrecer Testimonio Ante un Foro Legislativo, Administrativo o Judicial*, Ley Núm. 115-1991, según enmendada, 29 LPRA sec. 194 *et seq.*, la *Ley Sobre Despidos Injustificados*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.*, y la *Ley Antidiscrimen de Puerto Rico*, Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 LPRA sec. 146 *et seq.*; (2) En segundo lugar, el foro *a quo* declaró No Ha Lugar la referida moción de desestimación en cuanto a las causas de acción presentadas bajo la *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico*, Ley Núm. 90-2020, según enmendada, 29 LPRA sec. 3111 *et seq.* (Ley Núm. 90-2020), y la *Ley para Prohibir el Discrimen Contra las Personas con Impedimentos Físicos, Mentales o Sensoriales*, Ley Núm. 44 de 2 de julio de 1985, según enmendada, 1 LPRA sec. 501 *et seq.* (Ley Núm. 44-1985), en contra de Ruberté Santiago.

De lo anterior, **la parte peticionaria únicamente solicita que se revoque la denegatoria de desestimación de las causas de acción instadas bajo la Ley Núm. 44-1985, *supra*, y la Ley Núm. 90-2020, *supra*, en contra de Ruberté Santiago**. Es decir, no estamos ante una sentencia final ni ante una resolución que ponga fin a dichas causas de acción. Conforme a nuestro ordenamiento jurídico actual, una determinación mediante la cual se deniega una moción de desestimación no es apelable de manera automática, por lo que el recurso debió haber sido considerado como una solicitud discrecional de revisión mediante un auto de *certiorari*, conforme dispone la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

Ahora bien, aun si el recurso fuera acogido correctamente como un *certiorari*, no estoy conforme con que debamos ejercer nuestra facultad discrecional para expedirlo. A mi juicio, en el presente caso no se configuran los criterios que justificarían la expedición del auto, conforme a la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 64-65, 215 DPR __ (2025). En particular, no se desprende del expediente que nos ocupa que el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho, ni que la etapa del procedimiento en que se presenta el caso de autos es la más propicia para su consideración. Tampoco se advierte que la expedición del auto evitaría un fracaso de la justicia. Así las cosas, considero que la determinación del foro juzgador, al denegar la moción dispositiva en cuanto a las causas de acción incoadas bajo la Ley Núm. 44-1985, *supra*, y la Ley Núm. 90-2020, *supra*, en contra de Ruberté Santiago, no representa un abuso de discreción ni una actuación judicial que exceda los contornos de la sana administración de la justicia. En virtud de ello, hubiese acogido el recurso como un *certiorari* y, a su vez, denegado la expedición del auto.

Por las razones antes expuestas, respetuosamente disiento con el dictamen emitido.

Waleska Aldebol Mora
Juez de Apelaciones